UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ANDRE J. RUSHION,

                Plaintiff,                            **MEMORANDUM AND ORDER**
                                                                              13-CV-4277 (RRM) (LB)

       - against -

NYS DIVISION OF PAROLE, administrative
hearing officer; BRIAN FULLER, Parole Officer;
JOHN DOE #1, Queens General Nurse; JOHN
DOE #2, Queens General Officer; JOHN DOE #3,
Queens General Officer; JOHN DOE #4, Queens
General Officer,

                Defendants.
----------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff *pro se* Andre Rushion, an inmate in the custody of the New York State Department of Corrections, filed this 42 U.S.C. § 1983 action on July 16, 2013, alleging multiple federal constitutional and state law violations stemming from an altercation with New York State parole officers and personnel at Queens General Hospital.[1] (*See* Compl. (Doc. No. 3) at 8–14 (ECF pagination).) Currently pending before the Court is defendant Parole Officer ("PO") Brian Fuller's unopposed motion for summary judgment.[2] (First Mot. for Summ. J. (Doc. No. 73).) For the reasons set forth below, Fuller's motion is GRANTED.

## BACKGROUND[3]

---

[1] This case was originally filed in the U.S. District Court for the Southern District of New York. The case was transferred to this district on July 30, 2013. (Doc. No. 5.)

[2] PO Fuller furnished Rushion by mail with a Local Civil Rule 56.2 Statement, which provided Rushion with the requisite notice that his failure to oppose PO Fullers' motion could result in the grant of summary judgment against him and the dismissal of his case. (*See* Doc. Nos. 72 (Decl. of Serv.), 74 (Rule 56.2 Statement).) In addition, this Court informed Rushion that if he failed to serve his opposition, PO Fullers' summary judgment motion would be considered unopposed. (9/29/15 Order.) Despite this notice, Rushion did not file any response to PO Fullers' motion for summary judgment.

[3] The following material facts are taken from PO Fullers' Local Rule 56.1 statement, as well as the exhibits

1

In December 2011, Rushion was on parole and under PO Tyrone Conyers' supervision. (Def.'s Statement Pursuant to Rule 56.1 ("56.1 Statement") (Doc. No. 74) at ¶ 3; Conyers Decl. (Doc. No. 76-2) at ¶ 2.) Rushion violated a condition of his parole on December 13, 2011 when his urine tested positive for cocaine and THC in a drug test conducted at the Parole Office, and PO Conyers and his partner, PO Bernisia Mejia, placed Rushion under arrest. (56.1 Statement at ¶¶ 4–5; Conyers Decl. at ¶¶ 3–4; On-Site Drug and Alcohol Test Record (Doc. No. 76-5).) After arresting Rushion, POs Conyers and Mejia handcuffed his hands behind his back and escorted him to a waiting vehicle. (56.1 Statement at ¶ 5; Conyers Decl. at ¶ 4.) Rushion became verbally abusive after he was handcuffed and threatened to kill POs Conyers and Mejia. (56.1 Statement at ¶ 5; Conyers Decl. at ¶ 4.)

As POs Conyers and Mejia placed Rushion in the transport vehicle, Rushion began banging his head on the car door.[4] (56.1 Statement at ¶ 6; Conyers Decl. at ¶ 5; Unusual Incident Report (Doc. No. 76-6) at 2 (ECF pagination).) The officers attempted to move Rushion back into the Parole Office, but Rushion attacked the offices by biting, kicking, and head-butting, and thrashing around, making it difficult to move him. (56.1 Statement at ¶ 6; Conyers Decl. at ¶ 5; Unusual Incident Report at 2 (ECF pagination).) Rushion continued his physical and verbal assault on the officers once brought back inside the Parole Office, and began attempting to bang his head on the wall. (56.1 Statement at ¶ 8; Conyers Decl. at ¶ 7; Fuller Decl. (Doc. No. 76-3) at ¶ 4; Unusual Incident Report at 2 (ECF pagination).) Several POs, including Fuller, Conyers, and Mejia, then placed restraints on Rushion's feet to control him and the New York Police

---

submitted in connection with the motion for summary judgment. *See* Local Rule 56.1(d); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). As previously noted, Rushion did not file any opposition or response to the motion, notwithstanding that PO Fuller served Rushion with the requisite notice to a *pro se* litigant under Local Rule 56.2.

[4] In his complaint, Rushion explains that he "attempted to kill himself by slamming his head through a passenger window." (Compl. at 8 (ECF pagination).)

Department ("NYPD") was called for assistance.[5] (56.1 Statement at ¶¶ 7–8; Conyers Decl. at ¶ 7; Fuller Decl. at ¶ 5; Unusual Incident Report at 2 (ECF pagination).)

Rushion continued to be combative, even with his hands and feet restrained, and the POs attached his hand and foot restraints to subdue him.[6] (56.1 Statement at ¶ 9; Conyers Decl. at ¶ 8; Fuller Decl. at ¶¶ 6–7.) PO Fuller and other officers moved Rushion down a tiled hallway to a back room of the Parole Office and placed him on the floor.[7] (56.1 Statement at ¶ 9; Conyers Decl. at ¶¶ 8, 10; Fuller Decl. at ¶¶ 7–8; Preston Decl. (Doc. No. 76-1) at ¶ 5 ("the hallway leading to the back room was tiled in December 2011, not carpeted, and that is still the case"), Ex. A (photograph of tiled hallway in Parole Office taken on or about August 4, 2015).) Once the NYPD and Emergency Medical Services ("EMS") arrived, Rushion was transported to Queens Hospital Center due to his excessive agitation and aggressive behavior. (56.1 Statement at ¶¶ 9–10; Conyers Decl. at ¶ 8; Rushion Medical Record (Doc. No. 76-7) at 3 (ECF pagination).)

Rushion was placed on a stretcher in the hospital where, according to his recitation of events, he remained for less than thirty minutes before an unidentified nurse came from behind

---

[5] Rushion alleges that he was taken from the van back into the Parole Office with "no struggle," and was pushed into a chair where shackles were put on his ankles with "no struggle." (Compl. at 8 (ECF pagination).)

[6] At his deposition, Rushion confirmed his statement in his complaint that he was "in no shape form or fashion a threat to [PO Fuller's] safety or any of the other parole officers['] safety." (Compl. at 9 (ECF pagination); Rushion Dep. at 42:13–16.)

[7] Rushion alleges in the complaint that after shackles were put on his ankles, two officers picked him up, with PO Fuller "pick[ing] up the bottom portion." (Compl. at 8 (ECF pagination).) He alleges that the officer carrying the "front part" of Rushion's body dropped Rushion after he started wiggling, and PO Fuller proceeded to drag Rushion on a carpet until his stomach was rug burned. (*Id.*) According to Rushion's account, PO Fuller dragged Rushion into a room, put his knees into Rushion's back, and choked Rushion with his hooded sweatshirt. (*Id.*) Fuller states in his declaration that after he brought Rushion to a back room with other officers, he left the area "and had no further involvement with the plaintiff." (Fuller Decl. at ¶¶ 7–8.)

3

him and broke his wrist by "aggressively" twisting it towards Rushion's right shoulder.[8] (56.1 Statement at ¶ 11; Compl. at 9 (ECF pagination); Rushion Dep. (Doc. No. 76-9) at 58:10–59:7.) Rushion cursed and spit at the nurse. (56.1 Statement at ¶ 11; Compl. at 9 (ECF pagination).) The nurse placed a surgical mask over Rushion's face and pressed his forearm on Rushion's "neck area very very hard and applied pressure while he grabbed the back of [Rushion's] sweatshirt and choked [Rushion] in the same mannerism as Officer Fuller." (56.1 Statement at ¶ 11; Compl. at 9–10 (ECF pagination).) That night at the hospital, Rushion complained of pain in his right rib, right wrist, right hand, and right finger from being subdued earlier in the evening. (56.1 Statement at ¶¶ 12–13; Rushion Medical Record at 5 (ECF pagination).) Medical examination the next day, December 14, 2011, revealed no injuries to Rushion except for a mild abrasion on the back of his right hand. (56.1 Statement at ¶ 14.) X-rays revealed no rib fracture and a possible "small chip fracture" in Rushion's right wrist of indeterminate age. (56.1 Statement at ¶ 15; Rushion Medical Record at 9–10 (ECF pagination).)

Following Rushion's discharge from the hospital on December 14, 2011, he was transferred to Rikers Island ("Rikers") where he was medically assessed. (56.1 Statement at ¶ 16; Rushion Dep. at 83:19–84:25.) The medical staff at Rikers gave Rushion ice once and painkillers for his wrist, but did not send him for additional x-rays or testing, did not put his hand in a cast, and did not place him on any kind of activity restriction. (56.1 Statement at ¶ 16; Rushion Dep. at 86:14–16, 88:22–89:21.)

On December 22, 2011, a preliminary parole revocation hearing was conducted at the Rikers Island Judicial Center. (56.1 Statement at ¶ 18; Dec. 22, 2011 Hearing Tr. ("Parole Hearing Tr.") (Doc. No. 76-8).) At that hearing, Rushion testified that on December 13, 2011, at

---

[8] At his deposition, Rushion stated that Fuller broke his wrist at the Parole Office by "putting his knees and putting his weight and pressure on top of the handcuff." (Rushion Dep. at 57:9–17, 70:24–71:16.)

4

the Queens Area I Parole Office, "people put their knees in my back, busted my rib up . . . I got rug burns right here - - I got lacerations all over my body from them roughing me up." (Parole Hearing Tr. at 11:17–20.)

Rushion commenced the instant action on July 16, 2013, alleging, *inter alia*, that PO Fuller violated Rushion's Eighth Amendment rights when he used excessive force (dragging, choking, and kneeling on Rushion) that resulted in Rushion suffering a rug burn on his stomach and ribs, a broken rib, and rib pain. (Compl. at 8–10 (ECF pagination).) Rushion also alleges that PO Fuller violated his Fourteenth Amendment Equal Protection rights by not adequately protecting Rushion from his own efforts to commit suicide. (*Id.* at 10 (ECF pagination).)

This Court has issued multiple previous Orders in this case. On September 25, 2013, the Court granted Rushion's application to proceed *in forma pauperis*, denied his requests for a preliminary injunction and temporary restraining order, and dismissed *sua sponte* all claims alleged against defendants "Administrative Justice Champbell" and the "Head Supervisor Chairman/Chief Counsel" of the "1st Department Disciplinary Committee." (9/25/13 Mem. & Order (Doc. No. 9).) On February 7, 2014, this action was consolidated with a second civil action, 13-CV-7083, that was transferred from the Southern District of New York. (2/7/14 Mem. & Order (Doc. No. 22).) The Court dismissed Rushion's claims against defendants Deborah Gulley and Karen McQuade on September 15, 2015. (9/15/15 Mem. & Order (Doc. No. 67).) Currently pending before the Court is PO Fuller's motion for summary judgment. (First Mot. for Summ. J.) Despite this Court's order to respond, (9/29/15 Order), Rushion has not filed a response to PO Fuller's motion.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories,

admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the Court must draw all "justifiable" or reasonable inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential

to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

In this case, Rushion, who is proceeding *pro se*, did not respond in any fashion to PO Fullers' motion for summary judgment. "Special solicitude" should be afforded *pro se* litigants, like Rushion, when confronted with motions for summary judgment. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Nevertheless, a *pro se* plaintiff is not otherwise relieved from the usual requirements of summary judgment. It is thus settled law that a *pro se* plaintiff, just like a represented one, may not rely solely on his complaint to defeat a summary judgment motion. *See Champion v. Artuz*, 76 F.3d 483, 485–86 (2d Cir. 1996). If a *pro se* plaintiff fails to oppose a motion for summary judgment, the Court may grant the motion if: (1) the *pro se* plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the Court is satisfied that "the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 486 (quoting Fed. R. Civ. P. 56(c)).

## DISCUSSION

### A. Sovereign Immunity

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "The reach of the Eleventh Amendment has . . . been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *Western Mohegan Tribe &*

7

*Nation v. Orange Cnty.*, 395 F.3d 18, 20 (2d Cir. 2004)). Thus, absent a state's consent to suit or an express statutory waiver, the Eleventh Amendment bars federal court claims against states. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Eleventh Amendment immunity also extends to suits for damages against state officers in their official capacities. *Id.* at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)); *McNamara v. Kaye*, No. 06–CV–5169 (DLI), 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008) ("[L]awsuits against state officers acting [in] their official capacity and lawsuits against state courts are considered to be lawsuits against the state.").

Here, Rushion alleges that PO Fuller was acting in his individual and official capacities when the alleged violations took place. (Compl. at 14 (ECF pagination).) New York State has not waived its immunity and there has been no statutory waiver. *See, e.g.*, *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court and that § 1983 was not intended to override a state's sovereign immunity."). Moreover, the Division of Parole is a state agency entitled to Eleventh Amendment immunity. *See Chapman v. New York*, No. 11–CV–1814 (ENV), 2011 WL 4344209, at *2 (E.D.N.Y Sept. 14, 2011) ("as an agency or arm of the State of New York, the New York State Division of Parole is . . . immune from suit under the Eleventh Amendment" (citing *McCloud v. Jackson*, 4 F. App'x 7, 10 (2d Cir. 2001))). Thus, to the extent that Rushion is suing PO Fuller for damages in his official capacity, the claims must be dismissed because PO Fuller is entitled to Eleventh Amendment immunity. See *Will*, 491 U.S. at 71.

**B. Excessive Force**

Allegations by a parolee that he was subjected to excessive force while being arrested by his parole officer for a parole violation are analyzed under the Fourth Amendment. *Turner v. White*, 443 F. Supp. 2d 288, 294–95 (E.D.N.Y. 2005) (applying Fourth Amendment analysis where "the excessive force was allegedly applied by officers in connection not with plaintiff's conviction, but rather with some new offense or violation they believed had been committed"); *see also Rivera v. Madan*, No. 10-CV-4136 (PGG), 2013 WL 4860116, at *8 (S.D.N.Y. Sept. 12, 2013) ("The Fourth Amendment applies to an excessive force claim brought by a parolee in connection with some new offense or violation [parole officers] believed had been committed." (internal quotation marks omitted)). Thus, although Rushion's allegation that PO Fuller used excessive force against him was brought under the Eighth Amendment, the Court construes it as a Fourth Amendment claim.

In order to establish that an officer used excessive force in violation of the Fourth Amendment, a plaintiff must demonstrate, "in light of the totality of the circumstances faced by the arresting officer, [that] the amount of force used was objectively [un]reasonable at the time." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004); s*ee also Batson-Kirk v. City of New York*, No. 07–CV–1950 (KAM), 2009 WL 1505707, at *11 (E.D.N.Y. May 28, 2009) ("To succeed on a Fourth Amendment excessive force claim, a plaintiff must show that the amount of force used was objectively unreasonable." (internal quotation marks omitted)).

Because "[t]he Fourth Amendment test of reasonableness 'is one of objective reasonableness,'" *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 399 (1989)), the inquiry is necessarily "fact specific" and requires a plaintiff to "establish that the government interests at stake [are] outweighed by 'the nature and quality of the intrusion on [plaintiff's] Fourth Amendment interests.'" *Amnesty Am.*,

361 F.3d at 123 (quoting *Graham*, 490 U.S. at 396). In balancing these interests, a court must consider, *inter alia*, "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). A court must consider the evidence "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Tracey v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). Moreover, courts must "make 'allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham*, 490 U.S. at 397). Nonetheless, the Second Circuit has cautioned that, "[g]iven the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am.*, 361 F.3d at 123.

In addition, a "successful excessive force claim under the Fourth Amendment requires the use of force that is serious or harmful, not merely *de minimus*." *Konovalchuk v. Cerminaro*, No. 9:11-CV-1344 (MAD), 2014 WL 272428, at *16 (N.D.N.Y. Jan. 24, 2014); *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (finding that "[n]ot every push or shove" is unconstitutionally excessive (internal quotation marks omitted)).

Here, Rushion has submitted "no competent, affirmative evidence to support his allegations," and his "testimony is so replete with inconsistencies and improbabilities that a reasonable jury could not find that excessive force was used against him." *Jeffreys v. Rossi* (*Jeffreys I*), 275 F. Supp. 2d 463, 475, 478 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of*

*New York* (*Jeffreys II*), 426 F.3d 549 (2d Cir. 2005). "[I]t is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage." *Jeffreys II*, 426 F.3d at 554. However, "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." *Id.* (internal quotation marks and citation omitted). "Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Id.* PO Fuller has met this burden here.

There are many facts in dispute in this case relevant to the excessive force inquiry. However, there is "nothing in the record to support [Rushion's] allegations other than [his] own contradictory . . . testimony." *Id.* at 555. Rushion alleges in the complaint that he was taken from the van back into the Parole Office with "no struggle," and was pushed into a chair where shackles were put on his ankles with "no struggle." (Compl. at 8 (ECF pagination).) He contradicted this account at his deposition when he said that he struggled with the POs. (Rushion Dep. at 12:21–13:3 ("Something happened where I ended up on the ground. I think when I started to walk in. I think. Or really when I got to the door. I think that I started struggling, and I think that they took me to the ground.").) Rushion alleges that PO Fuller alone dragged him down the hallway of the Parole Office, while PO Fuller has put forth evidence that he moved Rushion down the hallway with other officers. (Compl. at 8 (ECF pagination); 56.1 Statement at ¶ 9; Conyers Decl. at ¶¶ 8, 10; Fuller Decl. at ¶¶ 7–8.) Rushion alleges that he suffered a rug burn from the carpet in the hallway, while PO Fuller has put forth evidence that

11

the hallway is not carpeted and that medical examination of Rushion on the night of the alleged incident and the day after revealed no rug burn. (Compl. at 8 (ECF pagination); 56.1 Statement at ¶ 14; Preston Decl. at ¶ 5, Ex. A (photograph of tiled hallway in Parole Office leading to back room).) Rushion alleges that PO Fuller broke his rib with his knees while he was in the back room of the Parole Office, but Fuller has submitted medical evidence, including an x-ray, that there was no injury at all to Rushion's ribs, and states that he left the area after carrying Rushion to the back room. (Compl. at 8–9 (ECF pagination); 56.1 Statement at ¶ 15; Rushion Medical Record at 9–10 (ECF pagination); Fuller Decl. at ¶¶ 7–8.) Rushion also alleges that PO Fuller choked him in the back room of the Parole Office, but presents no medical or other evidence to corroborate this claim. (Compl. at 8 (ECF pagination).) In his complaint, Rushion alleged that an unknown nurse broke his wrist in the hospital, but then changed his story at his deposition and claimed that PO Fuller broke his wrist by kneeling on his handcuffs. (Compl. at 9 (ECF pagination); Rushion Dep. At 57:9–17; 70:24–71:16.) Further casting doubt on Rushion's claims, he alleged in his complaint that PO Fuller subjected him to abusive treatment because Rushion is a Muslim, (Compl. at 8–9 (ECF pagination)), but then explained in his deposition that, "[n]ah[,] . . . I exaggerated that." (Rushion Dep. at 41:15–18.) Indeed, Rushion clarified, "[h]e didn't know I was Muslim. I didn't turn Muslim until – I didn't start studying Muslim until after that little confrontation." (*Id.* at 42:4–8.)

      Viewing the evidence in the light most favorable to Rushion and drawing all reasonable inferences in his favor, the Court finds that no reasonable jury could credit Rushion's version of events and that there is no genuine issue of fact. *See Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (stating that to defeat summary judgment, nonmoving parties "may not rely on conclusory allegations or unsubstantiated speculation"); *Anderson*, 477 U.S. at 248

(defining a genuine issue of fact as when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Accepting the facts as set forth by PO Fuller, the "totality of the circumstances" demonstrate that PO Fuller acted reasonably in subduing Rushion. As acknowledged by Rushion, he posed a danger to himself at the time of the arrest. (Rushion Dep. at 42:18–20 ("I wasn't doing nothing wrong. All I did is try to bang my head through the window.").) PO Fuller has also established that Rushion continued to pose a threat to himself and the arresting and assisting officers even after being handcuffed.[9] (56.1 Statement at ¶¶ 8–9; Conyers Decl. at ¶¶ 7–8; Fuller Decl. at ¶¶ 4, 6–7; Unusual Incident Report at 2 (ECF pagination).) Thus, applying restraints to Rushion's feet, attaching his hand and foot restraints to subdue and calm him, and carrying him to a different location to wait for EMS and the NYPD to arrive was objectively reasonable under the circumstances.

In addition, the injuries, if any, attributable to PO Fuller do not rise to level of a Fourth Amendment Violation. To reach this level, injuries must be more than "*de minimus*." *Konovalchuk*, 2014 WL 272428, at *16. Rushion's only injury that arguably reaches this level is the possible small chip fracture in his wrist that he attributed to the actions of an unidentified nurse in the complaint. (56.1 Statement at ¶ 15; Rushion Medical Record at 9–10 (ECF pagination); Compl. at 9 (ECF pagination).) The injuries that he claimed that PO Fuller inflicted on him – rug burn, rib injury, and choking – are not reflected at all in the medical evidence in the

---

[9] Indeed, Rushion injured PO Conyers while he was being restrained. (Conyers Decl. at ¶ 9 ("At no point in time did I or any of my colleagues, including PO Brian Fuller, assault the plaintiff or try to choke him. Plaintiff was the one who was verbally and physically assaulting us. In fact, as a result of plaintiff kicking and hitting me, I suffered an injury to my right knee and my right arm[,] wrist and elbow."); Unusual Incident Report (noting that Rushion, while handcuffed, "began kicking several Parole Officers in an attempt to injure these officers" and that Rushion "kicked [Conyers] on [his] right kneecap and during the pursuing scuffle [PO Conyers'] right arm[,] wrist and elbow [were] hurt").)

record. Therefore, Rushion has failed to show that he suffered any injuries as a result of PO Fuller's actions.

Because PO Fuller's actions in restraining Rushion on the night of the arrest were objectively reasonable in light of the totality of the circumstances and Rushion has not shown that the level of force used was serious or harmful, PO Fuller is granted summary judgment as to Rushion's excessive force claim.

### C. Equal Protection

In his complaint, Rushion alleges that PO Fuller violated his right to equal protection under the Fourteenth Amendment by not protecting Rushion from himself when he tried to kill himself by slamming his head on the car door. Rushion has failed to raise any issue of material fact as to this claim. The evidence before the Court, which Rushion does not challenge, is that POs Conyers and Mejia escorted Rushion to the transport vehicle and that PO Fuller only began interacting with Rushion when he was back in the Parole Office. Because PO Fuller was not in any manner personally involved with, or even present for, the alleged deprivation of Rushion's constitutional rights under the Fourteenth Amendment, PO Fuller's motion for summary judgment on Rushion's equal protection claim is granted.

## CONCLUSION

In summary, there are no genuine issues of material fact in dispute, and the Court finds that PO Fuller is entitled to judgment as a matter of law. The Court also finds that Rushion has received adequate notice that the failure to file any opposition to PO Fuller's motion might result in the dismissal of this case. Therefore, PO Fuller's motion for summary judgment is granted and Rushion's claims against PO Fuller are dismissed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and *in forma pauperis* status is

therefore denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45, (1962).

The Clerk of Court is directed to enter judgment accordingly, mail a copy of the Judgment and this Memorandum and Order to plaintiff *pro se* and to note the mailing on the docket, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
September 21, 2016

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge